## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| GEORGE BEPKO<br>*Plaintiff-Respondent*,<br><br>v.<br><br>ST. PAUL FIRE & MARINE<br>INSURANCE CO.<br>*Defendant-Movant*. | Civil No. 3:04-CV-1996 (PCD) |

### RULING ON MOTION FOR SUMMARY JUDGMENT

St. Paul Fire & Marine Insurance Co., Defendant, filed a Motion for Summary Judgment [Doc. No. 40]. George Bepko, Plaintiff, has filed a response to the Motion, and Defendant filed a Reply. For the reasons stated herein, Defendant's Motion for Summary Judgment is **denied**.

## I.  BACKGROUND[1]

Plaintiff was injured by dental work performed by Dr. Donald Evanko, D.D.S., who was insured by Defendant. The question is whether Plaintiff's claim against Dr. Evanko was covered by Defendant's policy. The insurance policy at issue is a "claims made" policy, meaning that the insurance contract purports to cover only the claims that were filed while the policy was in force.[2] The policy was written to cover the July 2001 - June 2002 period, but Dr. Evanko failed

---

[1] Unless otherwise noted, all facts are cited from Defendant's Rule 56(a)(1) Statement [Doc. No. 42-1] and are admitted by Plaintiff in his Rule 56(a)(2) Statement [Doc. No. 44].

[2] A "claims made" policy is different from an "occurrence" policy. An "occurrence" policy covers all claims that stem from events that occur during the coverage period, no matter when the claim is actually filed. See St. Paul Fire & Marine Ins. Co. v. Barry, 438 U.S. 531, 535 n.3, 98 S. Ct. 2923, 2927 n.3, 57 L. Ed. 2d 932 (1978).

1

to pay premiums.  To cancel the policy, Defendant must give a 90-day notice by Registered Mail, Certified Mail, or U.S. Proof of Mailing.  After the 90-days, there is a further 30-day Reporting Period in which the policy holder can file any remaining claims.  The policy purports not to cover any claims made after the 120 day period, even if the event that gives rise to the claim occurred while the policy was in force.

In July of 2001, Dr. Evanko was told that because he had not paid his premiums, the policy was in danger of cancellation.  Defendant claims to have sent the cancellation notice by Registered Mail on July 31, 2001.  The notice stated that the policy would be cancelled effective October 29, 2001.[3]  The Registered Mail Return Receipt from this notice is dated "8/13" and is signed "Dr. Evanko."  Dr. Evanko denies signing the receipt.  In mid-August, Dr. Evanko received a demand letter from Plaintiff demanding payment for the negligent dental work.  Dr. Evanko did not forward this letter to Defendant.  On December 4, 2001, Plaintiff filed suit against Dr. Evanko, who gave a copy of the Complaint to Defendant in late December.

As part of a settlement with Dr. Evanko, Plaintiff was given the right to pursue any claim that Dr. Evanko had with his insurance company.  Plaintiff filed this suit arguing that Dr. Evanko's reporting of the claim in late December should count under the insurance policy and that the Defendant should pay this claim to Plaintiff.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate only when "the pleadings, depositions, answers to

---

[3]October 29, 2001 is 90 days from the date that the notice was sent, but since the notice had to travel by mail, the notice arrived with less than 90 days remaining until October 29.

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact as a matter of law." Fed. R. Civ. P. 56(c). No genuine issue of material fact exists and summary judgment is therefore appropriate when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986).

Any fact is material if it "might affect the outcome of the suit under governing law" and an issue is disputed or "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). However, "[c]onclusory allegations will not suffice to create a genuine issue." Delaware & H.R. Co. v. Conrail, 902 F.2d 174, 178 (2d. Cir. 1990).

The moving party bears the burden of establishing that summary judgment is appropriate, see Anderson, 477 U.S. at 249, 106 S. Ct. at 2511, and the court should draw "all factual inferences in favor of the party against whom summary judgment is sought, viewing the factual assertions in materials such as affidavits, exhibits, and depositions in the light most favorable to the party opposing the motion." Rodriguez v. City of N.Y., 72 F.3d 1051, 1061 (2d Cr. 1995) (citations omitted). Determinations of the weight to accord evidence or assessments of the credibility of witnesses are improper on a motion for summary judgment as these determinations are within the sole province of the jury. Hayes v. N.Y. City Dep't of Corr., 84 F.3d 614, 619 (2d Cir. 1996). "When reasonable persons applying the proper legal standards could differ in their responses to the questions raised on the basis of the evidence presented, the question is best left to the jury." Sologub v. City of N.Y., 202 F.3d 175, 178 (2d Cir. 2000).

## III.  DISCUSSION

The only question is whether Plaintiff's claim, first reported by Dr. Evanko in late December, is covered under the insurance policy.  Dr. Evanko had 30 days after the policy was terminated in which to notify Defendant of the claim.  If the policy was terminated on October 29, this time window closed on November 28.  If the 90 day notice period began to run when the notice was allegedly received, then the policy would terminate on November 11, and the 30 day window closed on December 11.  In either event, Dr. Evanko clearly missed the time period in which he was required to file any claims.

Plaintiff makes three arguments why the claim should still be covered by the policy: (1) The insurance policy required 90 days notice before cancellation.  Since the cancellation notice was received with less than 90 days until the stated termination date, October 29, 2001, the cancellation was improper and therefore void.  (2) The cancellation notice was never actually received as the signature on the Return Receipt is a forgery, which makes the cancellation invalid.  (3) Defendant should be forced to accept the claim anyway because it was filed soon after the Complaint was received and any delay would not prejudice the Defendant's defense of the claim.

## A. THE ARGUMENT THAT THE POLICY WAS NOT EFFECTIVELY TERMINATED[4]

"It is widely held that a policy requiring a particular number of days' written notice for effective cancellation means that number of days from the receipt of such notice by the insured."

---

[4]The Court assumes for this argument that the cancellation notice was actually received on August 13.

4

Lee R. Russ & Thomas F. Segalla, <u>Couch on Insurance</u> § 32:50 (3d ed.1995); <u>see</u> <u>Atwood v.</u>
<u>Progressive Ins. Co.</u>, No. CV950051089S, 1997 WL 583638, at *5 n.1 (Conn. Super. Sept. 3,
1997); <u>see</u> <u>also</u> Conn. Gen. Stat. § 38a-324 (2002) (requiring that notice of cancellation "shall"
be given).  This is especially true here where the policy states that, "If [the Defendant cancels the
policy], we'll give 90 days notice of cancellation for any reason."  (Policy, Ex. A to Def.'s Mem.
of Law in Support of Mot. for Summ. J. 8.)  Therefore, the policy did not terminate on October
29 as stated in the notice and as Defendant contends, but on November 11, thereby affording the
insured the 90 days notice.[5]  However, with the 30 day window and a November 11 cancellation
date, Dr. Evanko still failed to timely file his claim.

Plaintiff's claims that writing "October 29" as the termination date in the cancellation
notice, which failed to provide an actual 90 days before the cancellation became effective,
effectively rendered the cancellation notice void.  Plaintiff offers no authority in support of this
theory.  The Court disagrees with this result.[6]  "The fact that the notice of cancellation does not
allow the proper period of time is immaterial where the loss is sustained subsequently to the

---

[5]The Connecticut Insurance Commissioner has given seemingly contradictory statements on this issue.  The Commissioner has said that "Compliance with the minimum notice standards is determined by counting the number of calendar days beginning with the first day after the date of mailing of the transaction" but also that "[n]otice of nonrenewal *must be given* to the insured a minimum number of days in advance of the effective nonrenewal date."  Conn. Property/Casualty Bulletin PC-42-04 (May 5, 2004) (emphasis added).

[6]This issue is discussed in 96 A.L.R.2d 286 in which it is concluded that the more popular view is the view taken by this Court.  Florida, Maryland, Pennsylvania, and South Carolina are noted as the only jurisdictions which accept Plaintiff's view.  Florida and Pennsylvania have debated changing the rule.  Maryland has a conflict between federal and state courts.  South Carolina has only discussed the issue once.  The Court could find no Connecticut cases on point.  A Second Circuit case from New York lends support to the Court's conclusion.  <u>See</u> <u>Schwarzchild & Sulzberger Co. v. Phoenix Ins. Co. of Hartford</u>, 115 F. 653 (S.D.N.Y. 1902).

5

lapse of what would be the required period of time." Lee R. Russ & Thomas F. Segalla, <u>Couch on Insurance</u> § 32:53 (3d ed.1995); <u>see</u> <u>Atwood</u>, at *5 n.1.  Therefore, this argument is meritless.

## B. THE ARGUMENT ABOUT RECEIVING THE CANCELLATION

Plaintiff's second argument is that the notice of cancellation was never received by Dr. Evanko or his office and that the signature on the August 13 Certified Mail Return Receipt is not the signature of Dr. Evanko or his secretary.  Since the cancellation notice was never received as required by the policy, Plaintiff argues that the policy remained in force.  In support of this argument, Plaintiff submits Dr. Evanko's deposition testimony that he was out of the country on August 13.  (Dep. of Dr. Evanko, Ex. C to Pltf.'s Obj. to Mot. for Summ J. 18.)  Dr. Evanko further testified that anyone in his office would sign their own name and not his.  <u>Id.</u>, at 19. Finally, Plaintiff submits checks previously signed by Dr. Evanko showing that the signatures do not match the signature on the Return Receipt.  (Signed Checks, Ex. G to Pltf.'s Obj. to Mot. for Summ J. 1.)

Defendant argues that it should not have the burden of verifying signatures on every Return Receipt it receives.  It sent the notice via Certified Mail to Dr. Evanko's office and received a signed Receipt.  Further, Defendant argues that sending the notice Certified Mail was enough to cancel the contract, even if Dr. Evanko or his office never actually received such notice.  Neither the Defendant nor the Plaintiff cited any law in support of these arguments.

The Court discerns two questions of law on this issue.  (1) Is simply mailing the notice of cancellation sufficient to cancel the policy without regard to whether cancellation was actually received?  (2) Is Plaintiff's evidence legally sufficient to overcome Connecticut's presumption of

6

receipt once a letter is correctly mailed?  If either of these two questions are answered in Defendant's favor then cancellation was achieved.

In a case which raised these two issues, it was found that the insured had failed to overcome the presumption of receipt.  Echavarria v. Nat'l Grange Mut. Ins. Co., 275 Conn. 408, 418-19, 880 A.2d 882, 888-89 (2005).  Given that finding, the Connecticut Supreme Court found no need to address the issue of whether mailing was enough for cancellation.  Id.  Connecticut trial courts have not decided whether mailing is sufficient for cancellation and have split on similar language in other statutes.  Compare Denitto v. Transamerica Ins., No. CV900266438S, 1992 WL 361807, at *3 (Conn. Super. Dec. 2, 1992) (requiring only that the notice be mailed) with Hernandez v. Hartford Accident & Indem. Co., CV880277868S, 1 Conn. L. Rptr 317, 319 (Conn. Super. 1990) (requiring actual notice).  Since federal courts should avoid resolving undecided questions of law, especially state law, when the issue can be decided on other grounds, this Court will address the presumption of receipt first.

### 1. The Presumption of Receipt

Connecticut law provides a rebuttable presumption that a correctly addressed and mailed letter was received by the addressee.  Echavarria v. Nat'l Grange Mut. Ins. Co., 275 Conn. 408, 418, 880 A.2d 882, 888 (2005); see Tyler E. Lyman, Inc. v. Lodrini, 63 Conn. App. 739, 746-47 (2001); see also 29 Am. Jur. 2d Evidence § 262 (1994).  A party claiming that a letter was not received has the burden of showing that by "substantial evidence."  See O'Dea v. Amodeo, 118 Conn. 58, 61, 170 A.2d 486, 487 (1934).  A party must deny receipt, Echavarria, 275 Conn. at 418, 880 A.2d at 888, and then provide substantial evidence in addition.  See Precision Mech.

Services, Inc. v. Scottsdale Ins. Co., No. CV980416692, 2006 WL 759676, at *15 (Conn. Super.

Mar. 3, 2006).

      Here, Plaintiff has produced "substantial evidence" to rebut the presumption of receipt.

Dr. Evanko has denied under oath that the signature on the Return Receipt is his and has

provided copies of his signature for comparison.  He further asserted that he was out of the

country on a Carribean cruise on the date of delivery and could not have signed the Receipt.

Conclusorily, he testified that no one in his office signs his signature in his absence.  This

evidence counters the presumption of receipt and creates an issue of fact as to whether the notice

was received.


      **2. The Mailing/Cancellation Issue**

      Dr. Evanko had professional-liability insurance, cancellation of which is governed by

Connecticut statute.[7]

> (a) After a policy of commercial risk insurance . . . has been in effect for more
> than sixty days . . . no insurer may cancel any policy unless the cancellation is
> based on the occurrence, after the effective date of the policy or renewal, of one or
> more of the following conditions: (1) Nonpayment of premium . . . . If the basis
> for cancellation is nonpayment of premium, at least ten days' advance *notice shall
> be given* and the insured may continue the coverage and avoid the effect of the
> cancellation by payment in full at any time prior to the effective date of
> cancellation. . . . Notwithstanding the provisions of this section, the advance
> notice period for cancellation of [a policy like Dr. Evanko's] shall be at least
> ninety days. *No notice of cancellation shall be effective unless it is sent*, by
> registered or certified mail or by mail evidenced by a United States Post Office

--------

[7]Cancellation can also be governed by the policy language if the language exceeds the
protection given by law.  Here, the policy language closely tracks Connecticut law when
describing the type of notice required.  The policy does state that simply mailing a cancellation
notice is considered proof of cancellation, but the policy also states that "Any part of this policy
which conflicts with state law is automatically changed to conform to the law."

certificate of mailing, or delivered by the insurer to the named insured by the required date. **Conn. Gen. Stat. § 38a-324 (2002) (emphasis added).**

This statute commands that the notice "shall be given" to the insured, which implies that actual notice is required. The statute also provides that notice is ineffective unless it is "sent" by registered or certified mail, thus conditioning the effectiveness of a notice on a requisite sending. The result could be a two-fold qualification; the notice must be sent in the manner specified and also "given," which implies actual receipt. Alternatively, it could be read to require "giving" which is complied with by mailing as specified.

This professional-liability statute is very similar to the statute covering termination of motor-vehicle insurance, which is helpful because it has been litigated and analyzed by Connecticut courts.

> (a) *No notice of cancellation of a [motor vehicle policy] may be effective unless sent*, by registered or certified mail or by mail evidenced by a certificate of mailing, or delivered by the insurer to the named insured, and any third party designated pursuant to section 38a-323a, at least forty-five days before the effective date of cancellation, except that . . . where cancellation is for nonpayment of any other premium, at least ten days' *notice of cancellation accompanied by the reason for cancellation shall be given*. . . . **Conn. Gen. Stat. § 38a-343 (2002) (emphasis added).**

The relevant parts of the two statutes are nearly identical except that the motor-vehicle statute states that no mailed cancellation "may" be effective unless mailed or delivered, while the professional-insurance statute says that no cancellation "shall" be effective unless mailed or delivered. The use of the word "shall" instead of "may" does not seem to indicate a difference in requirement because both sentences still require that notice be sent.

The motor-vehicle statute, unlike the professional-insurance statute, continues in § 38a-344 to specifically state that mailing is sufficient.

9

> *Proof of mailing by certified mail*, return receipt requested, notice of cancellation, or of intention not to renew or of reasons for cancellation, to the named insured, and any third party designated pursuant to section 38a-323a, at the address shown in the policy, *shall be sufficient proof of notice.* **Conn. Gen. Stat. § 38a-344 (2002) (emphasis added).**

The fact that § 38a-324 has no similar provision suggests that proof of mailing alone should be sufficient notice. Since the Connecticut legislature apparently "knew how to write" such a limitation, it could be inferred that none was intended. Cf. State v. Courchesne, 262 Conn. 537, 617-18, 816 A.2d 562, 608 (2003); Seraya, Inc. v. Wirth, No. CV9970313S, 2001 WL 577185, at *4-5, (Conn. Super. May 10, 2001). The language of § 38a-344 existed when the predecessor to § 38a-324 was written, but similar language was not added. See Conn. Gen. Stat. § 38-175j (1989) (language of § 38a-344) (first enacted in 1969); 1987 Conn. Pub. Acts 87-128 (enacting in 1987 the relevant portion of what became § 38a-324).

Finding § 38a-324 to be unclear if not ambiguous, interpretations performed by Connecticut courts may be illustrative. A search revealed no Connecticut cases discussing this issue in the context of Conn. Gen. Stat. § 38a-324.[8] The language of § 38a-343, when combined with § 38a-344, in comparison, strongly suggests that mailing shall be sufficient proof of notice, a clarity that § 38a-324 lacks. In fact, § 38a-344 explicitly provides that "Proof of mailing [to the address in the policy] shall be sufficient proof." Nonetheless, Connecticut trial courts have split over the effect of § 38a-343 and § 38a-344.

Relying only on § 38a-343, one court concluded that mailing the notice satisfied the

---

[8]The Connecticut Superior Court, while discussing another issue, briefly described Conn. Gen. Stat. § 38a-324 as the statute which "provides that no notice of cancellation is effective unless delivered by the insurer to the named insured by the required date." Travelers Property Cas. v. H.A.R.T., Inc., No. CV980485730S, 2001 WL 649616, at *5 (Conn. Super. May 18, 2001). This supports a requirement of actual notice.

statute.  See Denitto v. Transamerica Ins., No. CV900266438S, 1992 WL 361807, at *3 (Conn.

Super. Dec. 2, 1992).  In Denitto, the insured had moved and had definitely not received the

cancellation, but since mailing to the policy address was sufficient, the statutory requirement was

deemed met.  Another Connecticut court decided that § 38a-343 requires only mailing because of

the language in § 38a-344.  See Schneider v. Brown, No. CV340692, 2003 WL 21040162 (Conn.

Super. Apr. 23, 2003) (thoroughly discussing the legislative history and dictionary definitions

behind the statutes' language).

 However, three Connecticut courts appear to have reached the opposite conclusion on §§

38a-343 and 38a-344.  In dicta at the end of an opinion on another issue, it was noted that § 38a-

343 required that actual notice "be given."  Hernandez v. Hartford Accident & Indem. Co.,

CV880277868S, 1 Conn. L. Rptr 317, 319 (Conn. Super. 1990).[9]  The Hernandez opinion was

discussed approvingly when the same issue was presented in Atwood v. Progressive Ins. Co., No.

CV950051089S, 1997 WL 583638 (Conn. Super. Sept. 3, 1997).  Atwood also noted the

seeming "dichotomy" in the language of § 38a-343 requiring both that notice be "given" and

"sent," Atwood, at *4, and concluded that actual notice was required.  Schneider criticized both

Hernandez and Atwood for ignoring the strong language in § 38a-344, which was found to be

dispositive.  See Schneider at *8.  Finally, one Connecticut court found that § 38a-343 required

actual notice *despite* the strong language of § 38a-344.  See Rios v. Old Republic Ins. Co., No.

CV044004614, 2005 WL 3594580 (Conn. Super. Dec. 5, 2005).  The Connecticut Appellate

Court held that the purpose of § 38a-343 was to prevent people from losing their insurance

---

 [9]In a collateral estoppel dispute in a later case, that ruling was held to be dicta.  See
Harbour v. Hartford Acc. & Indem. Co., No. CV880247882S, 1993 WL 7499, at *2 (Conn.
Super. Jan. 11, 1993).

without knowing about it.[10]  The court in <u>Rios</u> used this purpose to override any language to the contrary in § 38a-344.  <u>Rios</u>, at *2-3.

No Connecticut courts appear to have interpreted § 38a-324.  Two Connecticut courts reviewed the very similar language of § 38a-343 and decided that actual notice was required, but another Connecticut court has disagreed with that finding.  One Connecticut court has taken the language of § 38a-343 and combined it with the strong language of § 38a-344 to decide that actual notice was not required.  Another Connecticut court has decided that § 38a-343 did not require actual notice despite the strong language of § 38a-344.

The legislative history of § 38a-324 is not instructive.  The Committee on Insurance and Real Estate held hearings on the bill in which both proponents and opponents of the bill referred to it simply as the bill "requiring notice".  <u>See</u> Conn. Joint Committee Hearings, Insurance and Real Estate, Pt. 1, 1987 Sess., pp. 157, 167 (proponent and opponent, respectively).  However, the question of whether actual notice was required was not discussed.  The Committee voted favorably on the bill, and the House and Senate both accepted the bill without substantive discussion.[11]

The policy argument behind requiring actual notice is the same for all insurance notice provisions.  As noted by Representative Gerald Stevens when arguing in favor of the notice

---

[10]<u>See</u> <u>Kane v. American Ins. Co.</u>, 52 Conn. App. 497, 502, 725 A.2d 1000, 1003-04 (1999), <i>aff'd</i>, 252 Conn. 113, 743 A.2d 612 (2000).

[11]Many of Connecticut's insurance statutes have notice requirements and each has a different legislative history.  Connecticut courts have noted that the legislative history for § 38a-343 suggests that actual notice should be required.  <u>See</u> <u>Johnston v. American Employers Ins. Co.</u>, 25 Conn. App. 95, 97-98, 592 A.2d 975, 977 (1991) ("purpose of General Statutes § 38a-343··· is to assure that before an automobile insurance policy is cancelled the insured has a clear and unambiguous notice of the cancellation").

requirement in § 38a-343, "[i]f . . . someone has his insurance policy canceled and is driving

under the mistaken impression that he has insurance and subsequently is involved in an accident,

the consequences can be rather severe."  13 H.R. Proc., Pt. 10, 1969 Sess., p. 4437.  On the other

hand, Defendant argues that it is unreasonable to make it responsible for making sure that mail is

delivered correctly, and there is little more that they could have done to ensure receipt.  It can be

unfair to place businesses at the mercy of the intricacies of the mail system.  See Bittle v.

Comm'r of Social Services, 249 Conn. 503, 515-16, 734 A.2d 551, 559 (1999).  Indeed, this

concern is one of the motivating factors behind the presumption of receipt.

　　　　If, in an action based on diversity of citizenship, applicable state law is uncertain or

ambiguous, federal court must carefully predict how highest court of state would resolve the

uncertainty or ambiguity; where that court has not spoken, federal courts should apply what they

find to be state law after giving proper regard to relevant rulings of other courts of the State.

First Investors Corp. v. Liberty Mut. Ins. Co., 152 F.3d 162 (2d Cir. 1998).[12]  The Connecticut

Supreme Court announced that the purpose of statutory interpretation is a search for the intention

of the legislature.  See State v. Courchesne, 262 Conn. 537, 544, 816 A.2d 562, 568 (2003)

(noting that statutory language, legislative history, and legislative policy are all means towards

that end); Bittle v. Comm'r of Social Services, 249 Conn. 503, 507, 734 A.2d 551, 553 (1999).

Considering the foregoing, it is found that Conn. Gen. Stat. § 38a-324 requires actual notice.

This conclusion is based on the language of the statute (requiring that notice "*shall* be *given*"),

---

　　　　[12]The Court declines to abstain from deciding this question or to certify the decision to the
Connecticut Supreme Court because a federal court should not certify a question to a state court
where the question is neither intricate nor repetitive enough to warrant such a certification.  See
Motor Vehicle Cas. Co. v. Atlantic Nat. Ins. Co., 374 F.2d 601, 602 (5th Cir. 1967).

interpretations of similar language by Connecticut courts, the lack of a clear statement that mailing is sufficient such as in § 38a-344, and the policy consideration that citizens should be aware when their insurance is cancelled so that new insurance can be obtained.  Thus, Defendant must show that actual notice was received by Dr. Evanko.[13]


## C. THE ARGUMENT THAT THE CLAIM SHOULD BE ACCEPTED ANYWAY

Plaintiff's final argument is that Defendant should be forced to accept the claim despite its lateness because Defendant was not prejudiced by the delay.  Plaintiff points out that Defendant was notified about the suit before responsive pleadings were even due.  In support of this argument, Plaintiff cites Aetna Casualty v. Murphy, 206 Conn. 409, 538 A.2d 219 (1988) (holding that literal adherence to an insurance contract which requires that claims be reported in a certain time period was unnecessary when there was no prejudice to the insurer).  In Aetna, the Court did not describe the policy at issue as a claims-made policy or an occurrence policy. Defendant's Reply points out that there is reason to believe Aetna was limited to occurrence policies because of a discussion of whether timely notice was material to the policy.  The Aetna Court cited 8 J. Appleman, Insurance Law and Practice (Rev. Ed. 1981) § 4731, at 2-5, for the proposition that notice provisions are designed to give insurers adequate time to investigate and respond to claims, and the Court then concluded that, absent material prejudice, timely notice was not "a material part of the exchange."  Aetna, 206 Conn. at 418, 538 A.2d at 223.  The fact

---

[13]Defendant might have a policy argument that personal notice should not be required in cases such as intentional avoidance of receipt or authorized substitute receipt, but neither has been alleged here.

14

that the notice provision *is* an important part of a claims made policy, defining the insurer's undertaking, suggests that <u>Aetna</u> applied only to occurrence policies.[14]  <u>See</u> <u>ITC Investments, Inc. v. Employers Reinsurance Corp.</u>, No. CV98115128, 2000 WL 1996233, at *14 (Conn. Super. Dec. 11, 2000).

Claims made policies are generally cheaper; the insurer trades a reduced coverage period and the ability to "close the book on an account" in exchange for lower payments.  <u>See</u> <u>Zuckerman v. National Union Fire Ins. Co.</u>, 100 N.J. 304, 311-13, 495 A.2d 395, 399-400 (1985).  Claims made policies can be especially useful in more complicated insurance situations where damages may not appear for some time.  <u>Id.</u>  Connecticut has no statute prohibiting or limiting claims made policies.  Therefore, the Court finds that the limiting period of this claims made policy was a material part of the agreed coverage.  Forcing Defendant to accept a claim outside the claim period would expand the contracted coverage.

**D. CONCLUSION**

Plaintiff's arguments that Defendant should be forced to accept a late claim and that the incorrect date on the cancellation notice voided the cancellation are unsuccessful.  However, a material issue of fact still remains as to whether the cancellation notice was actually received by Dr. Evanko or his office.

The cancellation notice is presumed to have been received, but Plaintiff has produced

---

[14]For more discussion on the notice requirement of claims made policies, see <u>St. Paul Fire & Marine Ins. Co. v. Barry</u>, 438 U.S. 531, 535 n.3, 98 S. Ct. 2923, 2927 n.3, 57 L. Ed. 2d 932 (1978); Ostrager & Newman, <u>Handbook on Insurance Coverage Disputes</u> § 4.02[b][4] (12th ed. 2004).

enough evidence to counter this presumption.  "Presumptions which have their basis merely in

convenience and serve to bring out the real issues in dispute, thus avoiding the necessity of

producing evidence as to matters not really in issue, . . . operate only until the defendant has

produced some substantial countervailing evidence, some evidence sufficient to raise an issue,

and when that has been done they drop out of the case."  O'Dea v. Amodeo, 118 Conn. 58, 61,

170 A. 486, 487 (1934); see Vincent v. Mutual Reserve Fund Life Ass'n, 77 Conn. 290, 58 A.

963 (1904); Benanti v. Delaware Ins. Co., 86 Conn. 15, 84 A. 109 (1912); see also 58 Am. Jur.

Notice §§ 39-44 (2005).  Since Defendant is arguing that a valid insurance contract was

cancelled, Defendant must prove such cancellation by a preponderance of the evidence.  See Lee

R. Russ & Thomas F. Segalla, Couch on Insurance § 254:31 (3d ed.1995).


## IV.  CONCLUSION

For the foregoing reasons, the Court concludes that a material issue of fact remains.

Therefore, Defendant's Motion for Summary Judgment is **denied**.

SO ORDERED.

Dated at New Haven, Connecticut, August  10th , 2006.


_____
/s/
Peter C. Dorsey, U.S. District Judge
District of Connecticut